IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| GAGE DANE ZEEK, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:20-CV-162-Z-BQ |
| § | |
| GRAY COUNTY SHERIFF OFFICE, *et al.*, § | |
| § | |
| Defendants. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Proceeding pro se and *in forma pauperis*, Gage Dane Zeek filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights in connection with criminal charges originating out of Gray County, Texas. ECF No. 3, at 1–5; Am. Compl. 4–6, ECF No. 6.[1] He seeks monetary damages and asks the Court to review the criminal charges and overturn his conviction. Am. Compl. 5; Questionnaire 11, 14–15, ECF No. 16.

Under *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. Zeek filed a Complaint, an Amended Complaint (ECF Nos. 3, 6) and an Application to Proceed *In Forma Pauperis*, which the Court granted. ECF Nos. 7, 8, 9. The Court thereafter reviewed Zeek's Amended Complaint, as well as authenticated records provided by Gray County, and ordered Zeek to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he timely completed and returned. ECF Nos. 15, 16.

In accordance with *Special Order 3–251*, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

---

[1] Citations to Zeek's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

## I.     Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2019); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief

2

above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Discussion

### A. Zeek's Claims and the Authenticated Records

Zeek's Amended Complaint names the following Defendants: the Gray County Sheriff's Office[2]; Gray County Sheriff Michael Ryan; Officer Joel Skinner; Officer Nathan Smith; District Attorney (DA) Franklin McDonough of the 31st District; and attorney Claire Hamker Grammer. Am. Compl. 1–2, 4–6.

According to Zeek's Amended Complaint, Defendants violated his constitutional rights in the course of a criminal investigation that ultimately culminated in his conviction for possession and delivery of a controlled substance. Specifically, Zeek alleges that: (1) the Gray County Sheriff's Office criminally profiled him and violated his Sixth Amendment rights; (2) Sheriff Ryan criminally profiled him, tampered with evidence, and conducted an illegal search and seizure; (3) Officer Skinner violated his Fourth Amendment rights, criminally profiled him, illegally obtained a search warrant, and conducted an illegal search and seizure; (4) Officer Smith violated his Fourth Amendment rights, criminally profiled him, and conducted an illegal search and seizure; (5) DA McDonough violated his Sixth Amendment rights, violated due process, allowed an illegal search warrant, and acted in concert with Zeek's attorney to deprive him of the opportunity to view discovery; and (6) Attorney Grammer provided ineffective assistance of counsel and violated Zeek's Sixth Amendment rights. *Id.* at 4, 6. In response to the Court's questionnaire, Zeek confirms that he names Sheriff Ryan as a Defendant because he is a supervisor over Gray County

---

[2] Zeek refers to this Defendant as the "Gray County Sheriff Office," but the legal name is "Gray County Sheriff's Office."

Sheriff's officers, and he similarly seeks to hold the Office responsible because "allow[ing] illegal acts . . . makes them just as wrong as the ones that Do the acts." Questionnaire 8, 14, ECF No. 16.

Zeek contends that on March 21, 2018, Officers Skinner and Smith suspected him of burglary because he had served time in prison previously for a burglary charge and was an "easy target." *Id.* at 1–2, 4–5. Zeek alleges—and authenticated records confirm—that the officers conducted a traffic stop the evening of March 21 and searched Zeek's vehicle with his consent. *Id.* at 4, 8. Body camera footage of the incident and authenticated records provided to the Court by Gray County indicate that Officers Skinner and Smith had been notified of a burglary in progress. Zeek's car matched witness descriptions of the suspect's vehicle. According to Zeek, the officers searched his vehicle and found an item they believed to be stolen even though Zeek's passenger told them "it was his." *Id.* at 4. In addition, the officers recovered what they believed to be methamphetamine. *Id.* at 7–8, 10.

The following day, on March 22, Officers Skinner and Smith searched Zeek's residence pursuant to a search warrant issued for the burglary and instead found additional drugs. *Id.* at 1, 3, 6–7. Zeek complains that officers illegally obtained the burglary warrant because the items allegedly stolen were "left outside of the Building window for easy access later to Be Picked up." *Id.* at 4. He claims the officers lied to the presiding judge, "not going by what [their] Report say [sic] and the Property owner said," but instead stating that property was stolen when in fact nothing was taken. *Id.* at 1, 4–5 (providing that the items were left outside the window of the building "for someone to come Back at a later time to [retrieve]"). According to Zeek, the judge issued a search warrant for his residence, based on the foregoing, because he was suspected of burglary. *Id.* at 4–5. In his view, the judge would not have issued a warrant unless the officers lied because "there would have Been No ProBable cause to even try and get a warrant," where he merely left items

4

"outside a window for easy pick up later," meaning that "all items were left at the Property of [the victim]." *Id.* at 1, 6 (stating that "nothing was took [sic] from the property *that was stated Burglarized but left outside a window for easy pick up later*") (emphasis added); *see id.* at 2 (alleging that "if nothing was took from the . . . property . . . you can't get a search warrant for my house for stolen property that was never took [sic] away from the original property"). Further, Zeek alleges that during the search of his home Officers Smith and Skinner (1) allowed the victim to help search for the stolen items, (2) broke into his locked safe (which was not specifically included in the search warrant), and (3) "pick[ed] out things that . . . were not stolen" and later returned them to Zeek's mother when they concluded it was not stolen property. *Id.* at 3–4, 6–7.

Zeek was later charged with, and ultimately pleaded guilty to, two counts of manufacture or delivery of a controlled substance in Penalty Group 1, based on evidence obtained during execution of the search warrant.[3] *Id.* at 7–8 (agreeing that one of the counts he pleaded guilty to for manufacture or delivery of a controlled substance resulted from the March 22 search of his residence). As part of the plea bargain, Zeek signed an "Agreed Order of Destruction" waiving his right to have the drugs tested. *Id.* at 10. Nevertheless, Zeek believes his conviction should be overturned. *Id.* at 15. He essentially argues that the conviction is unlawful because Defendants violated his rights during the initial stop and subsequent searches, all of which led to the drug charge and conviction. Am. Compl. 4–6.

Zeek also takes issue with his attorney's performance in the criminal case, alleging that she did not allow him to see the evidence against him, allowed him to enter into a plea bargain when the state did not test the methamphetamine, and permitted him to plead guilty when the state charged him with a smaller quantity of drugs than he actually possessed. Questionnaire 9–11.

---

[3] Authenticated records show Zeek was also charged with burglary of a building, but the charge was later dismissed.

Further, he claims Attorney Grammer conspired with DA McDonough to deprive him of access to discovery. *Id.* at 12. Zeek explains that he believes the DA and his counsel conspired because neither would allow him to view the evidence, but he knew "the stuff took [sic] was not Drugs." *Id.* at 12–13. Ultimately, Zeek acknowledges that his drug conviction has not been reversed, invalidated, or otherwise expunged (*id.* at 8), and he is currently serving his sentence in the Texas Department of Criminal Justice (TDCJ) Wheeler Unit. ECF No. 17.

### B. Zeek's request for relief in the form of release from TDCJ and reversal of his state criminal conviction are not available remedies under 42 U.S.C. § 1983.

While implied but not specifically requested, any attempt by Zeek to use § 1983 to reverse his state criminal conviction fails as a matter of law. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (distinguishing between habeas relief and that available through § 1983); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) (noting "§ 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures," while "[a] habeas petition . . . is the proper vehicle to seek release from custody"); *Whitfield v. Bd. of Pardons & Paroles*, No. 3:11–CV–2037–N–BH, 2011 WL 5986013, at *2 (N.D. Tex. Sept. 14, 2011) (citing *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998)) ("A prisoner cannot challenge the fact or duration of confinement in a § 1983 action."), *R. & R. adopted by* 2011 WL 5980038 (N.D. Tex. Nov. 30, 2011); *Lewis v. Meier*, No. 3:01–CV–1574–R, 2002 WL 31156668, at *2 (N.D. Tex. Sept. 24, 2002) (finding that plaintiff's request for release from jail was "an inappropriate remedy in an action brought pursuant to 42 U.S.C. § 1983"). Thus, the

6

undersigned recommends that the district judge dismiss Zeek's claims to the extent he seeks release from prison and the reversal of his criminal conviction.

### C. Zeek names defendants immune from, or not amenable to, suit.

Zeek attempts to recover monetary damages (*see* Am. Compl. 5) for alleged constitutional violations committed by parties either immune from or not amenable to suit under § 1983, i.e., DA McDonough, the Gray County Sheriff's Office, and Attorney Grammer. Am. Compl. 1–2, 4–6; Questionnaire 9–14.

Zeek contends that DA McDonough acted in concert with Zeek's attorney to violate the Sixth Amendment and his due process rights by "allowing a[n] illegal search warrant"[4] and by refusing to provide him discovery related to his criminal case. Am. Compl. 6; Questionnaire 12–13. DA McDonough enjoys absolute immunity from monetary damage claims arising out of actions taken during the exercise of his duties. *See Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) ("A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as advocate for the state in the courts, or when her conduct is intimately associated with the judicial phase of the criminal process." (internal quotation marks omitted)); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (per curiam) (acknowledging that criminal prosecutors "enjoy absolute immunity from claims for damages asserted under § 1983 for actions taken in the presentation of the state's case"). Accordingly, Zeek's claims against DA McDonough based on McDonough's purported actions during the course of Zeek's prosecution—i.e., depriving him of access to discovery, allowing an illegal search warrant, violating due process, and violating Zeek's Sixth Amendment rights—should be dismissed. *See Epps v. City of Dall. Police Dep't*,

---

[4] According to Zeek, a judge issued the search warrant (for Zeek's residence) because he was a suspect in the burglary investigation. Questionnaire 4–5. Other than the conclusory assertion of an "illegal search warrant," Zeek makes no allegations, factual or otherwise, demonstrating DA McDonough's personal involvement in obtaining the warrant or how any conduct related to the warrant violated Zeek's constitutional rights.

7

Civil Action No. 3:15-CV-3881-L, 2016 WL 1642946, at *1 (N.D. Tex. Apr. 26, 2016) (dismissing at screening claims against district attorney because he possessed absolute immunity under § 1983).

To the extent Zeek attempts to recover damages against the Gray County Sheriff's Office, he fails to state a claim upon which relief may be granted because the Sheriff's Office is not suable. "Federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit." *Torti v. Hughes*, Civil Action No. 3:07-CV-1476-M, 2007 WL 4403983, at *2 (N.D. Tex. Dec. 17, 2007) (citing cases for support); *accord Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (quoting *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991)) ("In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'"). Zeek has pleaded no facts demonstrating that the Gray County Sheriff's Office, as a county sheriff department, is a separate jural entity subject to suit. *See, e.g.*, *Darby*, 939 F.2d at 313 (quoting *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)) (explaining that a political subdivision such as a police department only has the capacity to be sued if it "enjoy[s] a separate legal existence"); *Williams v. Hunt Cnty., Tex. Sheriff Dep't*, No. 3:17-cv-3264-D-BN, 2018 WL 2031915, at *2 (N.D. Tex. Apr. 4, 2018) ("The sheriff's department of a Texas county is not a jural entity subject to suit."), *R. & R. adopted by* 2018 WL 2018592 (N.D. Tex. May 1, 2018); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (dismissing plaintiff's claims against the Houston Police Department because it "lacks legal existence and the capacity to be sued"); *Gibson v. Dall. Cnty. Jail Sys.*, Civil Action No. 3:07–CV–0490–L, 2007 WL 1576264, at *2 (N.D. Tex. Dec. 17, 2007) (holding the Dallas County Jail and its medical department are not separate legal entities

with jural authority). In addition, the Gray County Sheriff's Office is not liable for the actions of their employees because 42 U.S.C. § 1983 does not impose vicarious liability. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). Because Zeek has alleged no facts demonstrating that the Gray County Sheriff's Office possesses the capacity to be sued, established law requires dismissal of these claims, even if Zeek could plead underlying constitutional violations.[5]

Finally, to successfully state a claim under § 1983 against his criminal defense lawyer, Attorney Grammer, Zeek must show that her actions are "fairly attributable to the State." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *accord Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Criminal defense attorneys, whether privately retained or publicly appointed, are not state actors. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Small v. Dall. Cnty.*, 170 F. App'x 943, 944 (5th Cir. 2006) (per curiam) ("[Plaintiff's] claim against [defendant] is not cognizable under § 1983 because a defense attorney in a criminal proceeding is not a state actor."); *Segue v. Carollo*, Civil Action No. 14–2842, 2015 WL 2089759, at *4 (E.D. La. Apr. 30, 2015) ("The law is clear that under no circumstances can . . . a private attorney who represented or was retained to represent [plaintiff] in his criminal case . . . be considered a state actor for Section 1983 purposes as a matter of law."). Because Zeek's defense attorney is not a state actor, the undersigned recommends that the district judge dismiss Zeek's claims against her.

---

[5] The Court does not construe Zeek's allegations against the Sheriff's Office as raising a municipal liability claim. *See* Questionnaire 14 (explaining that he named the Sheriff's Office as a Defendant "[b]ecause it was not just one or two people" that violated his constitutional rights but failing to allege such persons acted pursuant to a policy or custom).

### D. Zeek has not demonstrated that Sheriff Ryan was involved in any constitutional violations that give rise to supervisory liability.

Zeek concedes that he names Sheriff Ryan as a defendant because of his supervisory role over the other officers and admits he had no personal interaction with the Sheriff. Questionnaire 8. It is well established that supervisory officials are not liable for the acts of their subordinates unless: (1) they affirmatively participated in an act that caused a constitutional deprivation, or (2) they implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A prisoner must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303.

Zeek has not asserted a cognizable claim against Sheriff Ryan based on supervisory liability. He simply alleges Sheriff Ryan is responsible for the alleged unconstitutional actions of his subordinates. Questionnaire 8 (conclusorily stating "he allowed and or knew" about Officer Skinner and Officer Smith's purported conduct, and that the seized drugs "never went to the lab"). Section 1983, however, does not permit a theory of liability premised on respondeat superior. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."); *Thompkins*, 828 F.2d at 303 ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); *see also Stone v. Gusman*, CIVIL ACTION NO. 16-1321, 2017 WL 3037632, at *2 (E.D. La. June 21, 2017) (collecting cases) ("It is beyond cavil that a § 1983 claim cannot be based on the theory of respondeat superior."), *R. & R. adopted by* 2017 WL 3034362 (E.D. La. July 18, 2017). Because Zeek has not pleaded adequate facts demonstrating Sheriff Ryan personally violated his

10

constitutional rights or implemented an unconstitutional policy, the Court must dismiss any claims against this Defendant.[6]

### E. The conduct Zeek attributes to Defendants Smith and Skinner during the search and seizure of items from Zeek's home does not state a viable constitutional claim.

Zeek complains that during the search of his residence, Officers Smith and Skinner (1) allowed the victim to enter his home and help search for the stolen items, (2) "broke open" his locked safe, and (3) "pick[ed] out things that . . . were not stolen" and later returned them to Zeek's mother when they concluded they were not stolen property. Questionnaire 3–4, 6–7. While these claims arise from Zeek's dissatisfaction with a search related to the burglary investigation, the search nevertheless resulted in the drug charges to which he ultimately pleaded guilty. *See* Questionnaire 7–8 (agreeing that one of the counts to which he pleaded guilty for manufacture or delivery of a controlled substance resulted from drugs found during the March 22 search of his residence pursuant to the burglary search warrant). For this reason, *Heck* most likely bars these claims, as discussed below (*see* Section II.F.)—to the extent it does not, however, other independent grounds justify their dismissal.

As to Zeek's first claim, the presence of a civilian during the execution of a search warrant to assist the police in the identification of stolen property does not implicate the Constitution. *See Wilson v. Layne*, 526 U.S. 603, 611–12 (1999) ("Where the police enter a home under the authority of a warrant to search for stolen property, the presence of third parties for the purpose of identifying the stolen property has long been approved by [the Supreme Court] and . . . common-law tradition."); *Waller v. City of Fort Worth*, CIVIL ACTION NO. 4:15-CV-670-Y, 2018 WL

---

[6] Zeek also alleges that Sheriff Ryan is responsible for "tamping [sic] with evidence" but provides no factual basis for this assertion. Am. Compl. 4. Any claim against Sheriff Ryan for evidence tampering is wholly conclusory, devoid of supporting facts, and insufficient to state a viable claim under § 1983. *See generally DeMarco v. Davis*, 914 F.3d 383, 386–87 (5th Cir. 2019) (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

11

1757779, at *8–9 (N.D. Tex. Apr. 12, 2018) (discussing *Wilson*); *cf. Hopgood v. Gunnlaugsson*, No. 07-51021, 2008 WL 2660773, at *1 (5th Cir. July 8, 2008) (unpublished) (quoting *Wilson*, 526 U.S. at 614) ("The presence of third parties in the execution of a warrant is unconstitutional where it is not 'in aid of the execution of the warrant.'"). Zeek acknowledges that the third party was present to help police search for stolen items. *See* Questionnaire 4, 6. Thus, he cannot state a cognizable claim.

Next, Zeek cannot maintain a cause of action under § 1983 for damage caused to his personal property through execution of a search warrant or the erroneous seizure of property the officers believed to be stolen.[7] An official's actions—whether negligent or intentional—that result in a loss of property give rise to a state tort action rather than a federal civil rights claim. Indeed, a state actor's negligence that causes an unintentional loss of property does not violate the Constitution. *See Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988) (per curiam); *see also Marsh v. Jones*, 53 F.3d 707, 712 (5th Cir. 1995) (concluding negligence is not actionable under

---

[7] Zeek also complains that the safe was not specifically identified in the search warrant "and had Nothing to Do with it." Questionnaire 4, 6. Although he does not allege that the officers seized property from the safe which led to his conviction, he seems to contend that the search was illegal because Defendants Smith and Skinner exceeded the scope of the warrant. *See id.* at 3–7. As explained further in Section II.F., Zeek's claims are barred by either *Heck* or the applicable statute of limitations. *See Cornett v. Longois*, No. 99-41303, 2001 WL 1223676, at *1 (5th Cir. Sept. 27, 2001) (affirming dismissal of claims that "would implicate the validity of [appellant's] criminal conviction if successful"); *Sliger v. Woodward*, CAUSE NO. 1–14–CA–00620–LY, 2015 WL 12748178, at *2 (W.D. Tex. Feb. 10, 2015) (concluding claims related to a 2011 search warrant were barred by the statute of limitations where plaintiff did not file suit until 2014).

To the extent neither principle bars the claim, however, it nevertheless fails. The authenticated records show that the search warrant authorized officers to "search for and, if same found, seize and bring before [the judge] the property described in the affidavit, to-wit: Tools, Household items, Firearms, Firearm Accessories, Ammunition. Any items obtained through the commission of theft or burglary." Moreover, Zeek explains that the safe in question is a *gun* safe (Questionnaire 7), and the Fifth Circuit has recognized that "any container situated within residential premises that is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." *United States v. Thomas*, 973 F.2d 1152, 1158 (5th Cir. 1992) (alterations and citation omitted); *cf. United States v. Moore*, 743 F.2d 254, 256 (5th Cir. 1984) (rejecting claim that search of a safe within a garage exceeded the scope of the search warrant, where the affidavit described the "premises" to be searched as "a certain building, house or place, occupied and used as a private residence . . . being the building, house or place of [plaintiff]," and concluding "that the search of the garage was within the scope of the warrant under Texas law"). Based upon the facts as pleaded, the officers did not exceed the scope of the warrant because it is reasonable to believe that the safe contained items named in the search warrant, including, but not limited to, firearms and ammunition.

12

§ 1983); *Finley v. Garcia*, CIVIL ACTION NO. 5:17-CV-00198-C, 2017 WL 11519122, at *1 (N.D. Tex. Sept. 15, 2017) (citation omitted) ("Section 1983 is not a general tort statute and a claim of negligence will not support a federal civil rights action."). Similarly, an intentional deprivation of personal property does not state a viable constitutional claim if the plaintiff has access to an adequate post-deprivation state remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Trevino v. McLean*, Civil Action No. SA-08-CA-0060-XR, 2008 WL 4868767, at *5 (W.D. Tex. Sept. 11, 2008) (granting motion to dismiss pursuant to *Hudson*).

Here, the State of Texas provides an adequate post-deprivation remedy for persons asserting claims such as those raised herein by Zeek—the filing of a lawsuit for conversion in state court. *See, e.g.*, *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Assuming, without finding, that Defendants Smith and Skinner wrongfully damaged and/or seized Zeek's property, as alleged, Zeek may have a cause of action in state court; however, he cannot pursue a federal constitutional claim. *See, e.g.*, *Lollis v. HUD*, No. 3–12–CV–0392–D, 2012 WL 1252568, at *4 (N.D. Tex. Mar. 14, 2012) (dismissing claim alleging "law enforcement officers . . . damage[ed] his personal property while executing a search, seizure, and disposal warrant" because "Texas provides an adequate post-deprivation remedy by way of a common law cause of action for conversion"), *R. & R. adopted by* 2012 WL 1267852 (N.D. Tex. Apr. 13, 2012); *Parr v. Ramsey*, No. 3-05-CV-0411-K, 2005 WL 3742820, at *4 (N.D. Tex. Nov. 1, 2005) (considering civil rights claim seeking damages for wrongful confiscation, loss, or destruction of property during execution of search warrant and concluding it must be dismissed where plaintiff had an adequate post-deprivation remedy).

### F. Zeek's desire to have his criminal case "reviewed" and assertions that Defendants Skinner and Smith violated his constitutional rights do not give rise to viable § 1983 claims.

Zeek generally contests the lawfulness of his conviction by asking this Court to "review[]" his criminal case and alleging that Defendants Skinner and Smith violated his Fourth Amendment rights by criminally profiling him and conducting an illegal search and seizure pursuant to an unlawfully obtained warrant. Am. Compl. 4–5; Questionnaire 1–7. Zeek confirms, however, that he pleaded guilty to the charges arising from the officers' investigation and alleged unlawful conduct, and that he is currently serving his sentence. *See* Questionnaire 7; ECF No. 13. As alleged, Zeek fails to state a cognizable claim under 42 U.S.C. § 1983.

In *Heck v. Humphrey*, the United States Supreme Court held that a plaintiff seeking to recover damages for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid" must first prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994). Where a favorable judgment in the civil rights action would "necessarily imply the invalidity of [a prisoner's] conviction or sentence" in his criminal case, the civil claim is barred unless the criminal conviction has been reversed or otherwise declared invalid. *Id.* In addition to actions for monetary damages, courts have subsequently applied the "*Heck* bar" to prisoners' claims for injunctive and declaratory relief. *Reger v. Walker*, 312 F. App'x 624, 625 (5th Cir. 2009) (per curiam) (noting that whether a plaintiff's claims are "for damages, declaratory judgment, or injunctive relief," they are not cognizable under § 1983 until plaintiff's conviction is overturned or otherwise declared invalid).

14

Here, a favorable judgment as to these claims would necessarily call into question the validity of the Zeek's criminal conviction because that is what Zeek asks the Court to do, both generally and specifically. *See* Questionnaire 14–15 (asking the Court to review both criminal charges and for the "case to be overturned," and further alleging unlawful conduct by Defendants Skinner and Smith by illegally obtaining and executing the search warrant); *see also, e.g., id.* at 1, 3, 4–8. Zeek concedes that his conviction has not been reversed, invalidated, or otherwise dismissed. *See id.* at 8. The alleged unlawful conduct he attributes to Defendants Skinner and Smith, i.e., purportedly lying to obtain a search warrant and unlawfully searching his home, ultimately led to the drug charges that resulted in his conviction. As a result, *Heck* bars these remaining claims.[8] *See, e.g., Shipman v. Sowell*, 766 F. App'x 20, 28 (5th Cir. 2019) (affirming *Heck* dismissal of claim that task force "lacked probable cause to search [appellant's] property"); *Agnew v. Abe Factor & Campbell*, Civil Action No. 4:17-CV-527-Y, 2019 WL 2995908, at *5 (N.D. Tex. July 9, 2019) (dismissing profiling claim pursuant to *Heck*); *Garcia v. Dall. Police Dep't*, No. 3:13-CV-1261-B-BH, 2013 WL 5433510, at *2 (N.D. Tex. July 29, 2013) ([Plaintiff's] claims for false arrest based on . . . illegal search and seizure clearly challenge the validity of his state court convictions and are therefore barred under *Heck*."), *R. & R. adopted by* 2013 WL 5434165 (N.D. Tex. Sept. 27, 2013); *Franklin v. Hull*, Civil Action No. 4:08–CV–377–Y, 2009 WL 144502, at *1–2 (N.D. Tex. Jan. 21, 2009) (dismissing as *Heck*-barred claim that plaintiff was

---

[8] If the *Heck*-bar does not preclude Zeek's unlawful search and seizure claims, they are nevertheless barred by the statute of limitations. Because the alleged unlawful search and seizure, by Zeek's own admission, occurred in March 2018, and he did not file suit until June 2020, Zeek's suit is untimely. *See Morrill v. City of Denton*, 693 F. App'x 304, 305 (5th Cir. 2017) (per curiam) (explaining that the statute of limitations for a § 1983 action is determined by the forum state's limitations period for torts and noting that in Texas it is two years from the date the cause of action accrues); *see also Jaramillo v. Renner*, 697 F. App'x 326, 326–27 (5th Cir. 2017) (per curiam) (affirming dismissal of time-barred illegal search claim because "on the date of the search and seizure . . . there was no 'extant conviction,' but merely an 'anticipated future conviction' and the statute of limitations began to run" on that date); *Harris v. Doe*, Civil Action No. 4:18-cv-638-P, 2019 WL 5739062, at *3–4 (N.D. Tex. Nov. 5, 2019) (finding that plaintiff's "claims of illegal search and seizure and lack of probable cause" were time-barred where he did not file his complaint until more than two years after the search).

innocent of criminal charge to which he had pleaded guilty); *Escamilla v. Dall. Police Dep't*, No. 3-01-CV-1159-G, 2001 WL 1338302, at *2 (N.D. Tex. Oct. 18, 2001) (dismissing under *Heck* claim alleging plaintiff had "been falsely charged for possessing drugs").

### III. Recommendation

For these reasons, in accordance with 28 U.S.C. §§ 1915 and 1915A, the undersigned recommends that the United States District Judge dismiss with prejudice Zeek's claims against DA McDonough, the Gray County Sheriff's Office, Sheriff Ryan, Attorney Grammer, as well as any claim for release from prison or reversal of Zeek's state criminal conviction. Further, the magistrate judge recommends that the district judge dismiss with prejudice, until the conditions of *Heck v. Humphrey* are met, Zeek's claims against Officer Skinner and Officer Smith.

### IV. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 16, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

17